*562 Statement of the Case.
NIOHOLLS, J.
Plaintiff alleged in its petition (filed May 13, 1904): That it was the owner and possessor of, and had been in possession for more than 10 years as -owner under title translative of property, ■of the following lands situated in this parish:
“A certain tract of land, together with all its appurtenances, in this parish, on the shore of Lake Yerret, containing about four hundred and eighty arpents of land, more or less, in superficies, bounded formerly by the land of Narcisse Alleman, H. Escoubas, and public school lands; a part of said lands being more fully described on the plats of the survey of the United States and of the state of Lousiana as the southwest quarter (S. W. %) of section eight (8) of township thirteen (13) south of range thirteen (13) east.”
That he became the owner thereof from Francis Martin and E. W. Dreibholtz by purchase by public act passed before James Fahey, notary public, on June 11, 1892, which was duly recorded in this parish of Assumption on July 12, 1892. That it and its authors have owned and possessed the said lands by deeds public and authentic in character, duly recorded in said parish, for more than 30 years past.
That lately one Gus J. Labarre, a resident of this parish, without color of title- and without pretense to the same, he well knowing the title of petitioner, has leased rights to cut timber on other parts of the land acquired by petitioner, at the, same time and under the same title, surreptitiously, maliciously, and with intent to injure petitioner, gone upon the said lands and through his agents and employés cut and deadened a large number of trees thereon, and would, unless prevented by orders of court, again go thereupon and remove the same, to the great and irreparable damage of petitioner.
That the said Gus J. Labarre had already cut down upon the said land a large number of trees, amounting as petitioner believed to over 3,000, and worth $18,000. 'That he had deadened 3,000 other trees, worth at least $18,000, thus by the said deadening destroying their value, by forcing petitioner to remove them at once or lose them entirely, while petitioner had hoped to profit by a great increase in value of the said timber. That the said trees and timber were situated very near to Lake Yerret, very accessible to-means of getting it out, and would in a few years have been worth at least $50,000; but that now, by the illegal, malicious, and surreptitious and tortious acts of the said Labarre, all hope of an increase of value was gone, and petitioner must at once proceed to cut and haul and saw up the said trees to prevent a total loss.
That by this illegal, malicious, tortious trespass it had been damaged in the sum of $3,000 by the malicious and unprovoked slander of his title; the said Labarre claiming a right to go- upon the land. That petitioner had been further damaged in the sum of $1,000 expense as attorney’s fees which it had incurred and was forced to incur to protect and defend its right of property, and it had lost by the destruction of his property by the cutting down of its trees, the sum.of $6,000, and by the deadening of the other trees a further sum of $6,000.
Petitioner reserved the right to sue for any timber or trees taken off of said lands, now averring that it could not Say at the moment whether any had been taken and carried away, but wishing specially to reserve its rights to claim further damages, should it find that any amount of trees or timber had been carried away from the said lands.
That upon making oath to the averments of this petition and giving such bond as the court require it was entitled to have a writ of injunction issue prohibiting and enjoining the said Labarre from further interfering with and trespassing upon the lands of petitioner, and from removing or attempting *564 to remove any of the trees and timber so cnt and deadened upon the said lands.
In view of the premises petitioner prayed that, upon his giving bond in such sum as the court may fix and order and upon making oath as required by law, a writ of injunction issue as above 'stated, prohibiting and enjoining the said Gus J: Labarre from further interference with the said property of petitioner, and from further deadening of trees upon the said lands, and from removing or attempting to remove the said trees and timber already cut thereupon; that the said Gus J. Labarre be cited to answer hereto, and that after due delay and legal proceedings had, the petitioner have judgment against him for the sum of $16,000 damages above set forth, with legal interest upon the said amount from judicial demand, and perpetuating the injunction herein prayed for, and for all and general relief, etc.
An order for an injunction was granted by the district judge on plaintiff’s furnishing bond in the sum of $500. An injunction issued.
Defendant, under reservation of exceptions and rights, moved to bond the injunction, which motion on a rule nisi was refused. The property on application of defendant was judicially sequestered, and a motion to bond the same was refused. Defendant filed the' following peremptory exceptions:
(1) The plaintiff’s petition neither set forth nor disclosed any cause or right of action.
(2) Should this be overruled, then and in that event exceptor pleaded as a further peremptory exception that plaintiff was not now, nor had ever been, in possession of the following lands, to wit: Tüe S. W. % of section “A,” township 13 S., range 13 B. That exeeptor was now and had been in the quiet, open, and undisturbed possession of the said lands for more than one year— exceptor having acquired said property on October 15, 1902, from Mrs. Octavie Moliere, widow of Eugene Superviene, by public act before Jos. U. Folse, a notary public in and for this parish; said act being duly recorded in the conveyance records of this parish; the authors of title of exceptor having been in-possession of said land since their acquisition in 1854; and exceptor pleading specially and peremptorily the want of possession on the-part of plaintiff of the lands hereinabove described, specially reserving his right to file an answer hereafter, should this exception of want of possession on the part of plaintiff be overruled.
In view of the premises exceptor prayed' that the first exception above be maintained, and the plaintiff’s suit dismissed, with cost. Should first exception be overruled, then and' in that event exceptor prayed that his said second exception be maintained, and plaintiff’s suit dismissed, with cost.
On motion of plaintiff the exceptions were-fixed for trial, but were reassigned and continued. On the day fixed plaintiff moved that the exception be taken as an answer, which motion was overruled. It then moved that the exceptions be referred to the merits, and this motion was granted. Defendant excepted, and filed a bill of exceptions to-this ruling, insisting that the exceptions should be taken up separately as exceptions, and not referred to the merits.
Defendant, under benefit of reservation of his exceptions and insisting upon a separate trial of the same answered, pleading first the general issue, averred that he was the legal owner and possessor of the following described property situated in Assumption parish, to wit:
The S. W. % of section 8 in township 13 S., range 13 E. The defendant acquired the said property on October 15, 1902, from Mrs. Octavie Moliere, widow of Eugene Superviene, by public act before Jos. U. Folse, a notary public of this parish, said act being recorded in Conveyance Book No. 47, folio 539, of the recorder’s office of this parish. That de *566 fendant was now and had been in the quiet and undisturbed possession of the said land ever since the said date of its acquisition by him. That the authors of defendant’s title had been in possession of said lands as owners ever since the year 1854, under title translative of property. Defendant admitted having deadened on his said lands 3,000 cypress trees since his said purchase, but specially denied that he had deadened any trees or cut any timber on any other lands in plaintiff’s petition described. Respondent specially denied that the plaintiff had ever been or was now in possession of the said lands above described.
That the officers and agents of the plaintiff corporation, who brought this suit and obtained the writ of injunction herein, well knew that the plaintiff had no right of possession of the land hereinabove described, and brought this suit and obtained said injunction for the sole purpose of injuring and annoying respondent. That respondent had been damaged in the sum of $1,000 by being compelled to stop work on his said lands and prevented from removing the trees he had deadened as aforesaid, 'by the injunction thus maliciously, tortiously, and illegally sued out.
That respondent had been further damaged in the sum of $1,000, as expense by attorney’s fees which he had incurred and was forced to incur to have the said injunction dissolved. That respondent was entitled to have said injunction dissolved, and to have judgment in solido against the plaintiff and the surety on his injunction bond herein, Louis Corde, of Assumption parish, for the stun of $2,000 damages as above set out.
In view of the premises defendant prayed that plaintiff’s demands be rejected and denied, and plaintiff’s suit dismissed, at its costs; that the injunction therein be dissolved; and that defendant have judgment in his favor and against plaintiff and Louis Oorde, surety on his bond herein, in solido, for-$2,000 damages as hereinbefore set forth.
Plaintiff filed an answer to defendant’s-answer, in which he pleaded that the title-set out by the latter was insufficient, in that plaintiff had held possession under title and held title translative of property, under which he possessed for more than 10 years-openly, peaceably, unequivocally, and notoriously. He pleaded the prescription of 10> years against the title set up by defendant.
Further answering the title set up by defendant, plaintiff alleged that it had itself’ possessed and owned the lands through itself and its authors for more than three years under the title acquired by Amadeo Blanchard;that the same was perfect; and it specially pleaded the pre-emption and prescription, provided for by article 233 of the Constitution of Louisiana.
It prayed that the title set up by the defendant be rejected, and that plaintiff be-quieted in his ownership and possession of’ the S. W. % of section 8 of township 13 S.,. range 13 E., in the Southeastern land district of Louisiana, lying and being in the-parish of Assumption.
Defendant moved to strike out this pleading on the ground that the issue before the-court was purely and simply one of possession, and any plea as to the title to this property was irrelevant and outside of the pleading; that the effect of the pleading was to-change the issue made by the original pleading, and was inconsistent with and contrary to plaintiff’s petition, and contradicted the-judicial admissions made therein. This answer does not seem to have been filed by leave of court and to have been further noticed.
On the trial of the case defendant objected to evidence offered by plaintiff to prove the-title alleged to be held by himself, insisting that his evidence should be restricted to-proving the nature and extent of his alleged *568 possession; that under the pleadings in the case the question of possession had to he decided first, and it was the only issue in this case. Defendant insisted on the trial of the question of possession as a separate and distinct issue, but the court allowed the evidence to go in, because the case could not be tried separately and by piecemeal, and refused to restrict the evidence. Defendant took a bill of exceptions to the ruling.
Defendant made no attempt to obtain an appeal from the action of the court refusing to allow him to bond the injunction, nor did he attempt to dissolve the injunction, otherwise than in his answer.
The district court rendered judgment against the plaintiff and in favor of the defendant, rejecting plaintiff’s demand and dissolving the writs of injunction and judicial sequestration which had been issued, and decreed that defendant recover from plaintiff $100 damages for attorney’s fees, and that plaintiff pay costs.
The district judge assigned written reasons for his judgment. After reciting the pleadings, he said:
“Plaintiffs charge defendant with malicious acts ■of trespass and slander of title, and, assuming as a fact that they are owners and that they possess as owners, they pray that their writ •enjoining defendant from interfering with their possession be perpetuated, and that they be awarded damages. This prayer characterizes the action simply and purely as possessory. Defendant meets this issue and prays that plaintiff’s demand be rejected, the writ of injunction ■dissolved, and for the recovery of damages. He ■does not attempt to change the nature of the action.
“Now, in order to successfully maintain the possessory action, plaintiff must show that they have had the real and actual possession of the property at the instant when the disturbance took place, that their possession has been quiet ¡and without interruption as owners for more than a year previous to the disturbance, that, the disturbance was real in fact or in law, and that their suit was brought within the year in which the disturbance took place.
“Defendant denies strenuously that plaintiff ever had possession at any time of the land in dispute, and on the other hand he claims possession in himself for more than a year previous to the filing of the suit and through his author since 1854, so that the issue of possession, its nature and duration, constitutes the main question for decision. A careful consideration of the testimony does not satisfy me that plaintiffs have shown by the preponderance of evidence that they have ever had the actual .physical possession of the property. The testimony of Messrs. Alphonse and Victor Gouner and A. J. Rodrigues shows that they did, at some time in the past, work on some timber lands for plaintiff or their authors; but these witnesses are unable to identify the lands upon which they worked, and they all three frankly admit that they cannot say in what section or quarter section were located the lands to which they thus refer.
“The surrounding circumstances as to time, distances, marks, and so on, which they relate in attempting to locate the land, do not seem to bear out the claim of plaintiffs. Messrs. Gouner, who are no doubt truthful and honest in their statement, evidently did work for the parties mentioned by them; but I do not believe, nor do they claim positively, that they worked on the S. W. % of section 8.
“The testimony of Mr. Dreibholtz and of Mr. Bulow is the only positive evidence offered by plaintiffs. Mr. Bulow says that he surveyed the quarter section in dispute as part of the Supervielle lands. Whence he acquired the knowledge that this quarter section had belonged to Supervielle does not appear. The Supervielle titles had not been recorded at the time he claims to have made this survey.
“He is equally certain that he made a plat of this survey, but neither he nor plaintiff could produce it, and its loss, if it ever was made, is not accounted for. It is shown that Mr. Bulow has a large map of the lands situated in this part of the parish; that most of the lands are identified on this map, with the name of the owners thereof; that sections 17 and 18 are marked with the name of Mrs. E. Supervielle, and yet the S. W. % is in blank. Mr. Bulow is a practical surveyor, and has practiced his profession in this parish for many years. He is a hightoned gentleman, and his honesty and veracity are above question, and the positiveness with which he asserts that he surveyed the land in question for Mr. Dreibholtz is, in my estimation, the strongest evidence offered by plaintiffs. Mr. Bulow has no doubt made a number of surveys in this neighborhood for the plaintiffs and a great many other owners and claimers of timber lands. It may be that he did make this particular survey, or it may be that he is making an honest error of memory. The other proven facts of the case and surrounding circumstances seem to indicate that the latter hypothesis is the more correct one of the two. Mr. Dreibholtz’s evidence in the matter of taking possession is to a large extent dependent upon the correctness of Mr. Bulow; for his only means of identifying the lands which he says he went upon is the information he derived from Mr. Bulow. It is further shown by Mr. Labarre that, although plaintiffs have a map in their office showing their lands in this locality, this particular piece does not *570 appear on this map as belonging to them. Other witnesses sworn on behalf of plaintiffs add little, if any, weight to their claim as to real and actual possession.
“Article 49, Code Prac., requires that a plaintiff’s possession, in the possessory action, should be real and actual, and expressly declares that a mere civil or legal possession is not sufficient. The land in dispute is a swamp and uninhabitable, and therefore not fit for occupancy; and, admitting that civil possession would support the possessory action (Ashley Co. v. Bradford, 109 La. 654, 33 South. 634), especially when uninhabitable land is the subject of controversy, I do not think that plaintiffs are in any better position. Civil possession is that which the law- recognizes as following the registry of title, without any actual occupation of the premises bought. The intention of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests possession in him. Ashley Co. v. Bradford, 109 La. 653, 33 South. 634; Ellis v. Prevost, 13 La. 230. Both plaintiffs and defendant introduced in evidence their titles. This they had a perfect right to do for two purposes: First, to show the nature and extent of their possession (Fix v. Succession of Dierker, 30 La. Ann. 175); and, second, to mitigate damages (Sallabah v. Marsh, 34 La. Ann. 1054).
“Plaintiff’s title described the land purchased by them from Martin and Dreibholtz June 11, 1892, as a ‘certain tract of land in the said parish of Assumption, on the shore of Lake Verret, containing 480 arpents, more or less, in superficies, bounded now or formerly by the lands of N. Alleman et al. and public school lands.’ It appears, further, from the maps in evidence and the testimony in the record, that the N. Alleman land was the extreme eastern point in section 18, known as ‘la pointe a Narcisse,’ and that no part of section 8 lies between sections 18 and public school land section 16, nor does section 8 or any part of it border on Lake Verret. It is true that the title of Martin and Dreibholtz, plaintiffs’ authors, mentions the lands of Escoubas as the other boundary, and that this description would embrace, not only the S. W. %, but also the S. E. %, of section 8, to which plaintiffs lay no claim; but it is equally true that the primitive title, that of Severin Blanchard to Amadeo Blanchard, also describes the land in the same language as that contained in the sale from Martin and Dreibholtz to plaintiffs.
“It is a well-known fact that these lands acquired from the government are all described by townships and sections, and the description in plaintiff’s title is, to say the least, vague and indefinite, and not sufficiently clear to identify the lands and put third parties on their guard, and cannot serve as a basis of title to the S. W. % of section 8. Scott v. Parry, 108 La. 13, 32 South. 188. For these reasons it does not appear to me that civil possession was ever vested in plaintiffs.
“Now it is admitted that defendant has deadened some 3,000 trees on the land in dispute, and this admission, coupled with the testimony of defendant’s witnesses, most of whom are also illiterate and unable to testify from maps and surveys, but who performed the-work of deadening these trees, sustain in my opinion the contention of defendant that he-had the real and actual possession of the land in dispute for more than a year previous to the institution of this suit. The evidence fails altogether to show any malice or bad faith on the part of either plaintiffs or the defendant; but defendant is entitled to actual damages in the way of attorney’s fees for dissolving the-writ, which fees are reasonably estimated at $100.
“For these reasons, and by further reason of' the law and the evidence being in favor of defendant, G-us J. Labarre, and against plaintiffs, the Ramos Lumber & Manufacturing Company, Limited, it is ordered that plaintiffs’ demand be rejected, that the writ of injunction and the judicial sequestration herein issued be dissolved, that defendant recover of plaintiffs, the sum of $100 as damages for attorney’s fees, and that plaintiffs pay all costs of suit.”
Opinion.
We think that defendant’s exception to-plaintiff’s petition, that it disclosed no cause of action, was not well taken. The allegations are full and specific, and would, if true, justify a judgment of some kind. What particular judgment plaintiff would be-entitled to on the trial of the merits under defendant’s pleading and the evidence which would be adduced would he dependent upon the facts established. Defendant, who filed this particular exception, could not dispute on the trial of the same the truthfulness, of the averments. We think the court’s action in referring the exception to the-merits to be then disposed of was not error under the circumstances of this case.
Questions of possession as affecting the-rights of the parties could be more properly and intelligently dealt with than on the trial of the exception. Whatever defendant’s, rights could have been under the facts disclosed under that issue were ■ effectually safeguarded by his counsel. Both parties were really fighting to obtain vantage-ground relatively to the burden of proof.
The Ramos Company contends that, though. *572 it occupied originally the position of a plaintiff, calling Labarre in as a defendant, it ■did so as plaintiff in a jactitation suit, or suit for “slander of title,” and that the ■situation was shifted when defendant filed his answer. It urged that by his answer defendant assumed the position of plaintiff in a petitory action and subjected himself to the rules governing that action. The present is not a petitory action.
The petitory action technically is one brought by a person acknowledging himself to be out of possession of certain real estate, ■of which he asserts himself to be the owner, against a party whom he admits to be in possession of that property, in order to have contradictorily with such party his own ownership recognized and decreed, and to have himself, through the instrumentality of the court, placed in possession. Plaintiff here does not admit that he is out of possession. He insists, not only that he is the owner, but in possession of the property. He denies that defendant is either owner or in possession. He does not seek relief through the court to regain possession, but demands damages for injuries done upon real estate alleged to belong to him, and for an injunction restraining defendant perpetually in the future from committing any acts of ownership upon it which he urges would be acts of trespass. He does not call upon the defendant to assert his rights of ownership, if any he has, but ab initio attacks the latter’s acts as being acts of malicious trespass. An examination of defendant’s pleadings discloses the fact that his position in the suit has been throughout strictly and purely “defensive.” He seeks no affirmative relief, contenting himself with resisting the attack which plaintiff makes upon him. His plea of the general issue placed plaintiff (as part of his case) upon proof of his demand, under the general rule that a plaintiff must establish his allegations affirmatively and justify his prayer for the relief which he seeks by proof of all the facts necessary to .entitle him to such relief. Plaintiff’s mere allegations as to his being owner of the property and in possession thereof at the time of the institution of the suit did not prove themselves, nor impose upon the defendant the burden of disproving them. Defendant had the right, as he did, to deny the allegations and to maintain that his immediate vendor had never been deprived of her ownership of the property, nor of her possession as owner, and that he himself, as her vendee by conventional sale, had acquired both ownership and possession from her, and that, so holding, he was entitled to provisionally maintain his asserted rights to such ownership and possession until the plaintiff should have judicially established his right to ownership. Oiv. Code, art. 3442. This case reaches the Supreme Court upon a completed record, where the whole situation has been developed, and it is in position to see what the actual situation calls for and demands. Defendant resists the charge brought against him of having maliciously and surreptitiously trespassed upon and injured the S. W. % of section 8, township 12, range 13 E. He urges that on the 15th day of October, 1902, he purchased that property from its actual owner, Mrs. Octavie Moliere, widow of Eugene Superviene, who had never lost the possession which the law accords to actual ownership, and who was in such possession at the time of his purchase. He maintains that immediately upon acquiring his ownership he followed up his acquisition by acts of ownership, by deadening and cutting down trees and removing some of the same. I-lis employés were in point of fact, at the time of the institution of the suit, upon the property engaged in deadening and cutting down trees thereon. Plaintiff concedes that Andrew Jackson Powell was' at one time *574 the actual owner of the quarter section of •section 8 mentioned; that he sold, it by precise description as the S. W. % of section 8, township IS S., range '13 E., to Eugene Supervielle; that Supervielle died on the 28th day of December, 1868, leaving his widow, Octavie Moliere, as his universal legatee; and that his said widow by conventional sale conveyed and transferred the same property, on October 15, 1902, to the defendant. It avers, however, that her sale to the defendant was a nullity and without effect, as she was not at that time the owner, as she had been already divested of her ownership, and had at that time neither rights of ownership nor possession which she could or did transmit or convey to her vendee Labarre. It contends that it was itself, at that time, the owner of the property, and, if not in the actual corporeal possession thereof, it held the legal or constructive possession, which by law is linked to and accompanies ownership as one of its attributes, independently of the fact of actual possession.
Plaintiff, who admits the actual original ownership and possession of Mrs. Supervielle to the S. W. % of section 8, must show affirmatively that she has been legally divested of the same, and prove how and when this was accomplished; also that it has itself acquired ownership and possession of the same under her title, as it claims that it did. Her admitted original ownership, with the legal constructive possession accompanying actual ownership, is presumed to have continued unless and until shown to have been divested and ousted.
“Possession” and “adverse possession” ex vi terminorum differ from each other. The latter is a possession held by one “not the owner” adversely to the actual owner.
Plaintiff contends that Mrs. Supervielle was divested of her ownership and possession of the quarter section of land by reason of a tax sale made on the 6th of January, 1883, by Alfred Tete, sheriff and ex officio tax collector for the parish of Assumption, at which tax sale the ownership and possession of the same became vested in the state of Louisiana through an adjudication then made to it for want of bidders.
It further contends that the state, after so acquiring the property, offered the same for sale at public auction on the 6th day of December, 1884, through Severin J. Blanchard, tax collector for the parish of Assumption, and that at that sale he adjudicated it to Amadeo Blanchard; that the latter sold the property on the 2d day of April, 1888, by conventional sale to Theodore Lehmann; that Lehmann sold the property by conventional sale on the 12th day of September, 1888, to Francis Martin and Ernest Dreibholtz, and that on June 11, 1892, the latter by conventional sale sold it (among other properties) to the plaintiff. It insists that it went into possession and enjoyment of all the property years ago.
The tax proceeding and adjudication to the state under which plaintiff claims that the ownership of the S. W. % of section 8 of township 13 S., range 13 E., became vested, and under which title it urges its own rights herein, purport by the tax collector to have taken place and been made under the provisions of Act No. 98, p. 146, of 1882. In his deed of transfer to the state that officer declares that after having complied with all the requirements of law by advertising for sale at judicial sale the landed property of all delinquent taxpayers of the parish of Assumption, on certain days named announcing said sale to begin on the first Saturday of January, 1883, and to continue on the Monday following and from day to day thereafter until the sale be completed, he proceeded.on the 6th of January, 1883, to offer for sale at public auction, and continued to do so on the following *576 Monday and from day to day, and, failing to have a bid for said delinquent property, he reoffered the same according to law for a second time, and having no bidder the following described property, to wit: Mrs. Eugene Supervielle, 400 arpents of land, more or less, in superficies, situated in this parish, bounded now or formerly by N. Alleman and school lands, was adjudicated to the state of Louisiana for the sum and priqe of $927.85, being the full amount of taxes, interest, and costs on the above-described property for the years as follows:
Years. State Parish (Levee Levee SheritE Record. Tax. Tax. Tax) T. Pees.
1873.. 6.96 4.80 5.01 1.75 2.00 2.00
1874.. 7.25 5.00 4.64 2.50 2.00 2.00
1875.. 181.25 159.37 101.50
1876.. 181.25 125.00 87.00
1877.. 6.50 5.00 2.60
1878.. 5.50 5.00 2.08
1880.. 3.00 2.50 .76
1881.. 3.00 2.50 .38
1882.. 3.00 2.50 1.75
$397.71 $311.67 $205.72 $4.25 $4.00 $4.00
Printer, $3.50 Total........$927.85.
Therefore he, the sheriff and tax collector, in the name of the state of Louisiana, by virtue of section 7 of said Act No. 98, p. 148, of 1882, did grant, bargain, assign, transfer, set over, and deliver, henceforth and forever, with full legal warranty, and vesting into the state of Louisiana an absolute title to said above-described property without redemption. An extract from the said assessment rolls of the parish of Assumption for the year 1882, introduced in evidence by the plaintiff, showed an assessment that year in the name of Mrs. Supervielle of 487 arpents of land bounded then or formerly by N. Alleman and school lands.
The title to Act No. 98, p. 146, of 1882 is “An act to enforce the miscellaneous ordinances of the Constitution of 1879 for the relief of delinquent taxpayers.”
The first section of the act makes it the duty of each sheriff and ex officio tax collector in the state to advertise 'for sale all property which had theretofore (heretofore) been forfeited to the state or to any parish for unpaid taxes which had theretofore (heretofore) sold to the state of Louisiana, and all property upon which any taxes due to the state of Louisiana or to any parish prior to January 1, 1880, remain unpaid or unsettled by partial payment and acknowledgment or confession of judgment.
On the 8th of December, 1884, Severin J. Blanchard, sheriff and ex officio tax collector for the parish of Assumption, executed by notarial act a deed of sale to Amadeo Blanchard of the property described as:
“Four hundred and eighty arpents, more or less, in superficie, situated on Lake Verret, in the parish of Assumption, bounded then or formerly by N. Alleman and school lands.”
The act declared that the same was made to the vendee as being the last and highest bidder at a sale at public auction by the said tax collector by virtue of and under the provisions of Act No. 82, p. 104, of 1884, for the price of $5, with the sum of $7.50 amount of costs. The act recited that the property described had been assessed in the name of Mrs. Eugene Supervielle and bid for the state of Louisiana.
In the subsequent act of sale of Amadeo Blanchard to Theodore Lehmann the property sold is described as:
“A certain tract of land situated in the parish of Assumption, on the shore of Lake Verret, containing four hundred and eighty arpents, more or less, in superficie, bounded now or formerly by lands of N. Alleman, H. Escoubas, and school lands, together with all the rights, ways, privileges, and appurtenances thereon and therewith belonging; except, however, all the machinery and other appurtenances belonging to the said mill on said land is reserved and makes no part of the sale—it being the same property acquired by the vendee from Severin Blanchard, sheriff and tax collector by act of sale on the 6th of December, 1884.”
In the act of sale from Lehmann to Martin and Dreibholtz, the property sold is described:
“A tract of land, together with all the buildings and appurtenances, situated in the parish of Assumption, on the shores of Lake Verret, containing four hundred and eighty arpents, more or less, in superficie, bounded now or formerly by N. Alleman; H. Escoubas, and *578 school lands; it being understood that the machinery and appurtenances belonging to the said mill or said lands are not included in the sale—it being the same property that Lehmann purchased from Amadeo Blanchard by Act of April 2, 1888.”
In the act of sale from Martin and. Dreibholtz to the plaintiff a number of tracts of land are described, among them one described as a certain tract of land situated in the parish of Assumption, on the shores of Lake Yerret, containing four hundred and eighty arpents, more or less (480), in superficies, bounded now or formerly by lands of N. Alientan et al. and public school lands.
The plaintiff urges, in support of his claim to have taken possession of the S. W. Yi of section 8, that their immediate vendors, Martin and Dreibholtz, caused that section to be surveyed in 1892 as their property by Auguste Bulow, deputy surveyor; that immediately thereafter they sent their employés upon the ground, who deadened, cut, and hauled away trees which were cut thereon; that when they left their work their employés or those of some of the parties who had preceded them (as they claim) in the ownership and possession of the section, left on the section a camp or pull boat, vestiges of which are still visible there.
In the consideration of the rights of the parties in this case, matters we think will be simplified by ignoring for the present the sale made by Mrs. Superviene to Labarre, and assuming that Mrs. Superviene herself had committed the act of deadening andi cutting down trees on the section which are charged to have been committed by Labarre, and assuming that this action was brought by the plaintiff against her, charging her with having done so, and in so doing had committed acts of malicious trespass upon and injury to the real estate, for which she was liable to it in damages.
We ar.e justified in reasoning from that standpoint; for if, in such a suit, she could successfully repel plaintiff’s attack by reason of her relation to the ownership and possession of the property, so also could Labarre, who was her transferee by conventional sale, and who acquired all her rights in those respects in the premises, and immediately took action under them. His rights (if not greater) were at least equal to those of his vendor, and the rights which she could have exercised would also protect him.
In the assumed condition of affairs Mrs. Superviene, admittedly the “actual original owner” of the section, would appear as a defendant in the suit, resisting the charge made against her of being a trespasser and resisting plaintiff’s pretensions. It is not suggested that Mrs. Supervielle has by conventional transfer of any kind parted with her rights-of ownership or of resulting possession, other than to Labarre. Plaintiff’s claim, therefore,, must either rest upon prescription acquirendi; causa, “under adverse possession,” under some title conveyed to it by a third party with whom she had no legal connection whatever, or by divestiture of her ownership and! possession through official or judicial proceedings in invitum directed against her and her property.
We do not understand the plaintiff to contend that it has acquired the property by prescription acquirendi causa, under, and* through adverse possession under a title-separate, distinct, and independent of her-own. On the contrary, in the brief filed on-its behalf plaintiff bases its rights upon the acquisition of Mrs. Supervielle’s title under a proceeding in invitum directed against her-property and herself; that proceeding being-a tax sale made by Alfred Tete, tax collector-for the parish of Assumption, under the provisions of Act No. 98, p. 146, of 1882, Under that statute there was no divestiture or-ouster of the possession of the taxpayer of the property which was to be offered for sale through a prior seizure of the same made by *580 the tax collector such as is made by a sheriff under an execution sale.
The taxpayer remains in the undisturbed possession of the property until after an adjudication of the property at the sale. The seizure and delivery of the property which ousted the possession of the owner was to be made under the statute after, and not before, the adjudication. The offering and adjudication did not ipso facto and proprio vigore operate the placing of the adjudicatee in the actual possession of the property adjudicated to it. A writ of seizure and of possession was directed to be placed in the sheriff’s hands, in order to convey to the owner notice of the proceedings and sale and afford him an opportunity to resist and assert his rights. The state did not attempt or even pretend to have taken possession of the property declared in the deed of Alfred Tete, tax collect- or, to have been adjudicated.
But, suppose that it had attempted to have taken actual possession without any writ; what property could it have taken? Evidently none other than that which had been offered for sale and adjudicated at the offering. What property was that? The deed declares “that it was 480 arpents of land, more or less, in superficie, bounded then or formerly by N. Alleman and school lands.” ■ There was in point of fact land lying between the lands then or formerly bounded belonging to N. Alleman and the school lands, the sixteenth section, assessed at $500 in 1882. '
Pretermitting just now discussion as to whether or not the tax proceedings had transferred the title and ownership of that land, and assuming that they did, that was the land which the state could have taken possession of. Had it taken any other land than the land advertised, offered for sale, and adjudicated, it would have been guilty of a tort and taken property of its citizens “without due process of law.” The state did nothing of the kind. The only action taken by the state officers was that taken by Severin J. Blanchard, the successor of Tete as tax collector, who in 1884 offered at public sale “480 arpents, more or less, lying on the shore of Lake Verret, bounded then or formerly by N. Alleman and school lands.”
It will be noticed that while this last tax collector changed (without any authority so to do) the “quantity” of land from 400 arpents mentioned in the Tete deed to 480 arpents and located the land on Lake Verret, he none the less conformed to the Tete deed and retained the identity of the land as being that which was bounded by N. Alleman and school land, and as being that which had been assessed in the name of Mrs. Superviene andi bid on by the state. While the location by Severin Blanchard of the land as being situated on Lake Verret was a departure from the words of the description in the Tete deed, it did no harm (though it added nothing to the force of that deed), as in point of fact the lands lying between lands then or formerly belonging to N. Alleman and school land necessarily fronted on Lake Verret, as shown by the map in the record. Lands of “Escoubas” or “Escoubas et al.” were mentioned as a boundary neither in the Tete deed nor in the Severin Blanchard deed. Those words appear for the first time in the act from Amadeo Blanchard to Theodore Lehmann. These purchasers could by no action or declaration on their part alter facts. The lands conveyed by the tax sale made by Alfred Tete were either the lands lying between the lands of N. Alleman and the school lands or none. Had the state officers intended, as they did not, they could not have changed the thing sold from that which was advertised and offered for sale and adjudicated to some other lands. They could not have done so, even though that other land would have been liable for sale for delinquent taxes as belonging to Mrs. Superviene. To have accomplished a divestiture *582 of her ownership and possession to such lands ■original proceedings de novo would have had to have taken place. The tax proceedings had to stand or fall as made. What the state officers may have intended to do or ■could have legally done was merged into what they actually did. In matters of conventional ■sale the parties to the same may reform a ■deed which does not conform to intentions; but no such right is vested in a state official in a forced proceeding, whether that officer be a sheriff or a tax collector. If there has been error, the error is fatal, and cannot be ■corrected by ex parte consent proceedings to which the owner has not consented to or been privy.
It has been established in this case beyond possibility of dispute that no part of S. W. % of section 8, township 13, range 13 E., is bounded or even touched by lands now or formerly belonging either to N. Alleman or the sixteenth section. We have to discard both of the declared boundaries (and there were none other given) in order to reach the S. W. % of section 8.
There is no party before the court contesting the legality of the tax proceedings which resulted in the adjudication to the state ■of the land lying between N. Alleman’s land '.and the school land. They may have been legal, or they may have been illegal; but no i,ssue is raised in this case as to that land. The sole issue before the court is whether the defendant, Labarre, or Mrs. Superviene, in entering upon 'the S. W. % of section 8, and deadening and cutting trees thereon, were guilty of a trespass, and, if so, whether the plaintiff was so connected with that land as to make those parties liable to it in damages.
We do not think that they were trespassers; but, if they were, we do not think that plaintiff has shown any rights in itself to hold them responsible to it. It has shown neither ownership in nor possession of the S. W. Í4 of section 8, on which the alleged acts of trespass were committed.
The failure of the state to become the owner of the S. W. % of section 8 (under the tax proceedings conducted by Tete, tax collector, and the adjudication made at that sale), either, by absolute or by imperfect title, carried with it as a necessary result that that adjudication could not give to the state the constructive possession of that property which the law attaches to ownership as one of its attributes and accompaniments.
That character of possession being attached to “ownership” as an “accessory,” when there is no ownership, there is no such possession. The only way the state could have obtained possession of the property was by taking possession “as a fact,” and that it did not. The státe having neither constructive nor actual possession, none could be nor was conveyed to Amadeo Blanchard by the adjudication made to him by Severin J. Blanchard.
We are satisfied ufider the evidence that neither he nor any of the parties succeeding him have ever taken possession of the S. W. % of section 8. The surveyor, Bulow, may have surveyed the lines of section 8 in 1802; but the deadening and cutting down of trees by the employés of Martin and Dreibholtz was not upon that land, but upon some other. Dreibholtz himself declares in his testimony that the trees on that quarter section were not deadened and cut by him, but were being saved, and the extent of the deadening and cutting claimed by the Gouners to have been made by them takes the lands in that section evidently out of their field of operations. Defendant testifies that trees had been deadened and cut up to the quarter section lines, but stopped there, showing that the parties deadening and cutting recognized the lines as the limit to their right to deaden and cut.
*584 We do not think any good would result from our reciting and analyzing the testimony as to possession on which our conclusions on that subject rest.
We. are not inclined to think that, had these acts been shown to have taken place on the section, they were of such character as could have been invoked by the plaintiff as conferring upon it an adverse possession against the “actual owner.” The acts, such as they were, were not repeated after 1892 and 1893. In the Cyclopedia of Law and Procedure (volume 1, p. 990), it is declared that:
“The weight of authority sustains the rule that the occasional going upon land and cutting timber thereon is not alone such evidence of ownership as to amount to a possession adverse to the true owner, and the additional circumstance that the claimant made a survey of the tract and marked its boundaries, or paid taxes on it and excluded trespassers, or cultivated one- or two crops on a small part of the tract, • * * or did similar acts, will not constitute actual possession.”
See verbo “Adverse Possession”; Ozark Land Co. v. Leonard (C. C.) 20 Fed. 881.
“It has been held that the mere erection of a shanty or a cabin on a tract of land, without use or occupation thereof, does not constitute an adverse possession. Wickliffe v. Ensor, 9 B. Mon. (Ky.) 253. And the fact that one occupies wild lands while removing timber therefrom does not show a bona fide and actual possession thereof as against the legal owner. McKinnon v. Meston, 104 Mich. 642, 62 N. W. 1014.”
“It may be laid down as a rule almost without exception that -plaintiff, in trespass upon land, to sustain his action must prove either actual possession of land or title to it. Dejarnett v. Haynes, 23 Miss. 600.”
Possession, in order to be sufficient to sustain an action for trespass upon land, must be exclusive; otherwise, plaintiff ■ is put upon proof of his legal title. Bartholomew v. Edwards, 1 Houst. (Del.) 17. Only persons in actual or constructive possession can maintain trespass quare clausum fregit in reference thereto, and such constructive possession is only that of the owner when no person is in the actual possession. Gunsolus v. Lormer, 54 Wis. 630, 12 N. W. 62.
“Constructive possession of land is always in the holder of the best title, unless he has' renounced it; and the constructive possession can never be ousted by anything less than an actual possession maintained for the necessary period.” Oye. vol. 1, verbo “Adverse Possession,” p. 983; Am. & Eng. Ency. of Law, verbo “Trespass.”
The prescription of three years under article 233 of the Constitution of 1898, invoked by the plaintiff, has no application to this case. Labarre is not a plaintiff, seeking to annul a tax title, but a defendant, resisting by exception or answer plaintiff’s attack. He insists that plaintiff has not made out its case; that the tax proceedings which it refers to do not cover or allude to the S. W. 34 of section 8, whether they were legal or not legal. Defendant in this case is not driven in support of his defense to invoke as against plaintiff an “adverse possession” of one year. He and his author have a right to rely upon the actual original ownership of Mrs. Superviene, his author, and upon the civil or constructive possession which are linked by law to ownership independently of actual possession.
We think the decree rendered by the district court on plaintiff’s demand is correct; but we do not think, under the circumstances of this case, that defendant is entitled to recover attorney’s fees as damages against the plaintiff. In so far as the judgment appealed from renders judgment in favor of the defendant against plaintiff for damages, it is annulled, avoided, and reversed; otherwise, it is hereby affirmed, at the costs of the defendant and appellee.