SARTAIN, Judge.
Oliver Liner, (appellee) instituted this possessory action on February 9, 1972 against Louisiana Land and Exploration Company (appellant) claiming that on February 3, 1972 representatives of the latter committed certain acts which constituted disturbances in fact and deprived him of the peaceful possession of his property.
The trial judge, with written reasons assigned, granted judgment in favor of plaintiff, permanently enjoined defendant from going on the property claimed by plaintiff, and ordered defendant to file a petitory action within sixty days of the effective date of the judgment or be thereafter precluded from asserting any ownership to the said property. From this adverse judgment appellant has appealed. We are compelled to reverse.
In his petition, appellee alleges that he possesses as owner property described as follows:
“A certain tract of land located in the Parish of Terrebonne, Louisiana, fronting on both banks of Bayou DuLarge, said property being located in Sections 25 and 36 of T 20 S, R 15 E, and in Sections 30 and 31, T 20 S, R 16 E, containing approximately 452.67 acres, more or less, and being shown and depicted on a map entitled ‘Survey of the Lands of Oliver Liner being in Sections 25 and 36 of T 20 S, R 15 E, and in Sections 30 and 31 of T 20 S, R 16 E, containing 452.67 acres, more or less, Terrebonne Parish, Louisiana.’ ”
Both appellee and appellant offered in evidence their respective deeds of acquisition for the limited purposes permitted under C.C.P. Art. 3661.[1] These instruments make it quite clear that appellee acquired Lots 45 and 46 (without reference to section numbers) situated in T 20 S, R 16 E and that appellant acquired property located in Sections 25 and 36 in T 20 S, R 15 E. Appellee contends, however, that he acquired portions of Sections 25 and 36, T 20 S, R 15 E, by acquisitive prescription of *868 thirty years. C.C.P. Art. 3658(2) [2] The extent of appellees claim is evidenced by a survey made by Edward C. McGee, Jr., and a plat thereof dated June 1, 1960, which was placed of record shortly thereafter.
The following" sketch depicts appellee’s claim and that portion thereof which covers property claimed by appellant: Thus it can be seen that the property which is the subject of this litigation comprises portions of Sections 25 and 36, T 20 S, R 15 E, *869 which is bounded on the west by Bayou Dufrene and on the east by the common line between T 20 S, R IS E and T 20 S, R 16 E. Appellant concedes it has no interest in any portion of appellees property located east of the Township and Range line but strongly contends that it owns and has exercised both civil and corporeal possession of all of the disputed property west of the said Township and Range line.

*868

*869 Appellant contends that its civil possession commenced in 1926 when it acquired the property by deed translative of title. In 1952 it had the property surveyed, placed concrete markers at all corners, and “No Trespassing” signs at 400 foot intervals along all of its boundaries. In May of 1958 it dug a ditch 6 feet wide and 4 feet deep just inside of and parallel to all of its boundaries so as to further identify and mark the same. This ditch, as shown on the above sketch, traverses the contested property in a north-south direction. Evidence was also adduced showing that the ditch was retraced in 1965 following Hurricane Hilda. The ditch is actually some thirty miles in length. Geophysical surveys were conducted in 1958 and 1965.
The great bulk of the testimony in the record before us emphasizes the attention both parties focused on the ditch. Appellant claimed it was its boundary and appel-lee claimed that he did not know who dug the ditch but that he dammed it up at each end of his property and used it to water his cattle.
On February 9, 1956, appellant granted a “Pipe Line Permit” to Tennessee Gas Transmission Company. It was stipulated that Tennessee installed a twenty-four inch gas pipe line in 1956 and that said pipeline has been in continuous operation ever since. As noted on the sketch above, this pipeline traverses the contested property in a northwesterly-southeasterly direction.
Appellee’s position can best be described by the following statement of the trial judge in his written reasons for judgment:
“Mr. Liner, who is 77 years of age, testified that before he began ’ possessing the property in the 1920’s his grandfather had possessed the property for many years before that time. Mr. Liner also testified that during these years of possession, no one ever made any legal claim against him or attempted to challenge his possession. (Tr. p. 66). It is clear from the testimony of Mr. Liner and the many witnesses called on behalf of plaintiff, that Mr. Oliver Liner was in possession of the property at the time of the alleged disturbance.
The evidence showed that the Liners have been trapping, hunting and fishing and maintaining the subject property constantly until the time of the alleged disturbance. However, the court believes from the evidence and therefore finds as a fact that the plaintiff (Liner) was in possession of the property described on the map offered and introduced into evidence filed as P-1 at the time of the disturbance and many years prior thereto, and that the boundaries of his possession were marked and could be defined. Each of the many witnesses who testified on behalf of plaintiff stated they had seen Mr. Liner or his sons on the subject property at one time or another occupying, trapping and maintaining the property. There is and has been a small house located on the portion of the property along the bank of Bayou DuLarge that was occupied by Liner and his sons in their use of the property for many years. Each of the witnesses who testified on behalf of the plaintiff also stated that the boundary lines of the property in question were clearly marked by the Liners.” [3]
The trial judge held that the evidence in this cause clearly preponderated in appel-lee’s favor in that the latter had for many *870 years marked his north and south lines with pickets, posts, and signs along the east bank of Bayou Dufrene. It is obvious to us that the trial judge considered Bayou Dufrene as a natural boundary. He concluded that the regular line of posts in the marsh on appellee’s north and south lines satisfied the requirement of. possession within enclosures as announced in Hill v. Richey et al., 221 La. 402, 59 So.2d 434 (1952).
It is not necessary for us here to discuss this aspect of the case or the details of the acts of appellant on February 3, 1972, which the trial judge also found to be a disturbance in fact. For the purpose of determining the merits of this action, which is limited to the right of possession and not ownership, and viewing these findings in a light most favorable to the appel-lee, we must hold that appellee has not satisfied the requirement of peaceful possession for one year prior to the disturbance complained of. C.C.P. Art. 3658(2) [4]
As noted above, appellant in 1956, as record owner, granted a right of way to Tennessee Gas. The pipe line was laid in a canal dug by Tennessee Gas which is approximately forty feet wide and traverses the contested property according to our calculations a distance of fifteen hundred feet.
Assuming, arguendo, that the same conditions as to proof of enclosures and possession of the contested property prevailed in 1956 as appellee contends, his peaceful possession was disturbed in fact by the construction, presence, and continued operation of the pipe line. Prior to the construction of the pipe line appellant was in civil possession of the property. Following its construction, appellant was in corporeal possession through the acts of Tennessee Gas, its “grantee”, and has continued to be in corporeal possession since 1956 to the present time.
In Chauvin v. Kirchhoff, 194 So.2d 805 (La.App.1967), a possessory action based entirely on disturbances in law, we said:
“ . . . Admittedly, the exercise of a servitude may result in a physical disturbance to the possessor, but this does not occur until the servitude is exercised and some work, such as the construction of a road or the building of a levee, has the practical effect of evicting the possessor from that portion of his land covered by the servitude.”
In the instant case we have the granting of a servitude and the actual construction of a pipeline.
Appellee also granted a servitude to Tennessee Gas, but the rights granted thereunder were specifically limited to ap-pellee’s property in T 20 S, R 16 E, which is in conformity with his title.
In Ree Corporation v. Shaffer, 261 La. 502, 260 So.2d 307, 310 (1972), our Supreme Court, in an opinion authored by Chief Justice McCaleb, recognized that under C.C.P. Art. 3660 [5] the owner of a real right possesses through his lessee. Mr. Justice Tate, while concurring in the result reached by the majority, stated:
“ . . . The determination of whether the plaintiff is in possession, or whether his possession is uninterrupted, is a matter of substantive law regulated by Articles 3426-3456 of the Louisiana Civil Code; and a possession is interrupted *871 only in the cáse of physical usurpation, Civil Code Article 3449,[6] not by a ‘disturbance in law’.”
Relative to the views expressed in either the majority or concurring opinions in Ree Corporation v. Shaffer, above, appel-lee has lost the right to maintain a posses-sory action. If C.C.P. Art. 3660 is applied, Tennessee Gas, acting under authority of the record owner, created a disturbance in fact in 1956, which disturbance has been continuing and uninterrupted ever since. Applying C.C. Art. 3449, appellee has likewise permitted the usurpation of property he now claims for a period well in excess of one year.
Accordingly, for the above reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of Louisiana Land and Exploration Company and against Oliver Liner, dismissing this suit at the latter’s costs.
Reversed and rendered.

. Art. 3661. Same; title not at issue; limited admissibility of evidenee of title.
In the possessory action, the ownership or title of the parties to the immovable property or real right is not at issue.
No evidence of ownership or title to the immovable property or real right shall be admitted except to prove:
(1) The possession thereof by a party as owner;
(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof.

. Art. 3658 Same; requisites
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.

. The trial judge did not mention the pipe' line or rule upon the legal consequences flowing from its construction and continued use.

. See note 2, supra.

. Art. 3660. Same, possession.
Art. 3660. A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.
Subject to the provisions of Articles 3656 and 3664, a person who claims the ownership of immovable property or of a real right possesses through his lessee, through another who occupies the property or enjoys the right under an agreement with him or his lessee, or through a person who has the use or usufruct thereof to which his right of ownership is subject.

. Art. 3449. Loss without consent of possessor.
Art. 3449. A possessor of an estate loses the possession against his consent:
1.When another expels him from it, whether by force in driving him away, or by usurping possession during his absence, and preventing him from re-entering.
2. When the possessor oí an estate allows it to be usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper’s possession.