342 So.2d 151 (1977)
PARKWAY DEVELOPMENT CORPORATION et al.
v.
CITY OF SHREVEPORT et al.
No. 58041.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied February 25, 1977.
*152 John Gallagher, Roland J. Achee, Neil Dixon, Charles C. Grubb, Shreveport, for defendants-applicants.
Sidney B. Galloway, Cook, Clark, Egan, Yancey & King, Arthur R. Carmody, Jr., Wilkinson, Carmody & Peatross, Shreveport, for plaintiffs-respondents.
DENNIS, Justice.
This possessory action was instituted on March 31, 1975 by St. Louis Southwestern Railway Company, its lessee, Parkway Development Corporation, and John C. Krepak, an officer of Parkway, against the City of Shreveport and its Mayor, L. Calhoun Allen, Jr. The incident giving rise to the litigation was defendants' forcible appropriation, through the actions of city police officers, of a piece of property which the Railway allegedly had possessed peaceably for over eighty years. Plaintiffs promptly filed suit seeking injunctive relief and damages, and after a hearing on the application for a preliminary injunction, the trial court enjoined defendants from disturbing plaintiffs' peaceful possession of the subject property. Defendants appealed devolutively to the Second Circuit Court of Appeal, which affirmed the trial court's ruling. We granted a writ of review primarily to consider whether a possessory action may be maintained against a municipality in the face of its claim that the disputed tract is public property.
Plaintiffs' rights in the property derive from an 1888 ordinance of the City of Shreveport granting the Railway's predecessor the right to "occupy and use" a one hundred foot wide strip along Commerce Street near the Red River. The original right-of-way extended from Cotton Street to Travis Street but for reasons which the record does not disclose, the Railway apparently abandoned the area between Travis and Texas Streets at an earlier date, so that the strip now in controversy runs 1,098 feet along three city blocks between Cotton and Texas Streets.
The Railway without interference constructed tracks, loading docks and other facilities on the property and leased portions of the strip to its patrons, who built warehouses and other commercial establishments thereon. In the mid-1950's, under the administration of Mayor Clyde Fant, the City began planning to upgrade the riverfront area, and a civic theater and convention center were constructed between the Railway property and the river. In 1963 and 1964 the City leased from the Railway a small section of the disputed tract to develop a "beautification area." After the Railway had removed its buildings in the area, the City planted grass and shrubbery, maintained it, and paid rentals under the lease until late 1973.
In 1968, the organizers of Parkway Development Corporation began negotiating with the Railway and the City for construction of a hotel-office complex over the railroad tracks on the property held by the Railway. John Krepak, an officer of Parkway, stated that the Railway was initially a reluctant participant in the negotiations, having some concern about the problems which might be created by the construction over its tracks. The City, on the other hand, embraced the plan enthusiastically, feeling that the proposed development would complement the adjacent civic facilities, and Mayor Fant encouraged plaintiffs to go forward with the development. Later *153 that year, in connection with the proposed construction, the City Council granted plaintiffs air rights over the streets crossing the property. After obtaining authorization from the City Council,[1] Mayor Fant, acting and signing on the City's behalf, in 1969, "join[ed] in, approv[ed] and ratif[ied]. . . insofar as [the City's] interests [might] appear" a long term lease between Parkway and the Railway. The lease provided that the prior agreement between the Railway and the City, under which it had occupied the beautification area, would terminate immediately upon commencement of the proposed construction.
After the induction of a new mayoral administration in 1970, the City began to withdraw its support of the development project. When Parkway announced its readiness to begin construction in 1973, the City Council refused to issue either a zoning change or building permit, which Parkway was informed would be withheld until the City had determined whether Parkway's construction would interfere with proposed public developments in the area. However, there was no immediate indication that the difficulties could not be worked out by co-operation between the parties. In October, 1973, Mayor Fant's successor, Mayor L. Calhoun Allen, Jr., notified the Railway that since the City felt it held fee title to the subject tract, it considered the City's 1963 and 1964 leases of the beautification area void, and declined to pay any further rentals. The Railway acquiesced in the cancellation of the leases, acknowledging that title to the property was uncertain, but specifically reserved its rights under the Parkway lease:
"This is done, however, with the express understanding that it is separate and apart from and without prejudice to our rights under our lease with the Parkway Development Corporation, to which lease the City is also a party."
In December, 1974, Mayor Allen informed plaintiffs that the City would not countenance any private development in the area of the civic center.
On March 22, 1974 a city traffic engineer removed the City's no parking signs around the disputed tract, but left the Railway no parking signs undisturbed; thereafter the public began parking on the property. Exactly one year later, on March 22, 1975, Krepak, apparently acting as an officer of Parkway, and with the Railway's authorization, erected a temporary fence around the property in order to operate a private parking lot, a use consistent with the zoning laws. When Mayor Allen learned of this activity, he dispatched the city police to remove Krepak's fence. This suit followed.
The issue presented for our consideration is whether plaintiffs are entitled to a preliminary injunction under Louisiana Code of Civil Procedure Article 3663(1), which makes this remedy available to "a plaintiff in a possessory action, during the pendency thereof." Defendants contend that plaintiffs may not obtain the requested relief because two factors make their possessory action insupportable: 1) plaintiffs' possession is merely precarious, and 2) the disputed tract is public property, which cannot form the subject of a possessory action.
Article 3656 of the Louisiana Code of Civil Procedure requires that the plaintiff in a possessory action be "one who possesses for himself," and further explains:
"A person entitled to the use or usufruct of immovable property, and one who owns a real right therein, possesses for himself. A predial lessee possesses for and in the name of his lessor, and not for himself."
Without determining the precise nature of plaintiffs' interest in the property, we are satisfied that they claim possession of a real right therein. The 1888 grant gave the Railway, its successors and assigns the right to "occupy and use" the tract. This grant of privileges conferred upon the Railway what has been denoted as a "limited *154 personal servitude."[2] Louisiana Code of Civil Procedure Article 3656 clearly entitles the holder of a real right to bring a possessory action. Louisiana Irrigation and Mill Company v. Pousson, 252 So.2d 151 (La.App. 3d Cir. 1971), affirmed at 262 La. 973, 265 So.2d 756 (1972).
Defendants contend, however, that since the grantee of a real right possesses both for himself and the owner, he may bring a possessory action only against third parties, and not against the acknowledged owner of the property. They call our attention to Article 3660 of the Louisiana Code of Civil Procedure and comment (b) of the Louisiana Code of Civil Procedure Article 3656, which provide:
Article 3660:
"* * *
"Subject to the provisions of Articles 3656 and 3664, a person who claims the ownership of immovable property or of a real right possesses through his lessee, through another who occupies the property or enjoys the right under an agreement with him or his lessee, or through a person who has the use or usufruct thereof to which his right of ownership is subject."
Article 3656, comment (b):
"There is no conflict between this article and Art. 3660, infra. A person who is entitled to the use or usufruct possesses the property or right both for himself and for the naked owner, and hence either may bring the possessory action."
These provisions do not militate the result urged by defendants. They merely establish that the owner of the property possesses through the grantee and may bring a possessory action against third parties who have disturbed or evicted him. But the grantee is a precarious possessor vis-a-vis the owner only insofar as the ownership of the property itself is concerned. Regarding his real right in the property, the grantee possesses for himself, and thus may bring a possessory action against the owner as well as others to be maintained in the enjoyment of that right. La.C.C.P. art. 3656. See, 3 A. Yiannopoulos, Louisiana Civil Law Treatise, § 49.
In any event, the City argues, a possessory action cannot be maintained against property in the public domain. This is an issue which has given this Court considerable difficulty in the past and which is at present unsettled.
In Martin et al. v. City of Lafayette, 162 La. 262, 110 So. 415, 416 (1926), we held that "mere physical possession of public places, even though extending beyond a year, is not such a possession as entitles the possessor to maintain himself against the public until ousted by a petitory action; . . . the public is entitled, to enter thereon at once." Although a determination of ownership is not appropriate in a possessory action, this holding necessarily puts title at issue whenever the defendant asserted that the property in dispute was public. See, Bruning v. City of New Orleans et al., 165 La. 511, 115 So. 733 (1928), and Moran v. City of New Orleans, 170 La. 499, 128 So. 290 (1930). For a period of time the matter was resolved legislatively by Act 82 of 1930, later La.R.S. 13:5061, which provided:
"Section 1. Be it enacted by the Legislature of Louisiana, That, whenever the State, a Municipality, Town or Village *155 thereof, is sued as a defendant in a possessory action brought by any person, firm, or corporation claiming to possess as owner, usufructuary, or claiming a real right to property, which is also claimed by the State, a Municipality, Town or Village thereof, to be public property constituting a locus publicus, then, in such cases the possessory and petitory actions shall be cumulated and the claim of title or real right vel non, of the person, firm, or corporation bringing such possessory action shall be tried contradictorily with the claim of title of the State, Municipality, Town or Village thereof, and any judgment rendered on the petitory phase of such suit shall carry with it a determination of the possessory action in favor of the party whose petitory claim has been affirmed and recognized. That all such cumulated actions of the character herein described shall be tried by preference in all courts."
But the issue was again cast into doubt when La.R.S. 13:5061 was repealed by Act 32 of 1960. We cannot assume, as defendants urge us to do, that the act was repealed by mistake or that it has any current effect.
However, the present case does not require us to decide whether a possessory action may be maintained against corporeal property which the defendant alleges is public because plaintiffs are merely seeking to be maintained in the enjoyment of a real right under a grant from the City. The City's ownership of the land is not in dispute, and the property's allegedly public character is not necessarily incompatible with the rights plaintiffs have asserted. Yiannopoulos observes:
"It has been already stated that private ownership may well co-exist with dedication to public use. Further, in certain cases, private rights of use and exploitation may be accorded by the authorities or reserved by the private owner upon dedication of a thing to public use." 2 A. Yiannopoulos, Louisiana Civil Law Treatise, § 36, p. 118 (1966).
The French law also distinguishes between an action for possession of public land itself and one for possession of an incorporeal right in the land. After stating that "[c]orporeal immovables can be the object of a possessory action bearing on the possession of the land itself only if they are in commerce [i.e., in the private domain] and, as such, susceptible of being acquired by adverse possession," Aubry & Rau note:
"* * * a private individual who exercised acts of use or enjoyment of something belonging into the public domain, by virtue of an administrative permit or simple tolerance, could bring a possessory action against [a] third party or even against the municipality which would interfere with this possession. The defendants can not plead in their own name that the property is imprescriptible for this exception is available only in public interest." 2 C. Aubry & C. Rau, Droit civil francais, § 185, pp. 129, 135-36 (La.St.L.Inst. transl. 1966).
We conclude that when the object of a possessory action is possession of a real right in the land allegedly granted by a governmental body and not the land itself, it is irrelevant whether the property has been dedicated to public use.
Defendants raise a number of other issues which bear upon the merits of the possessory action rather than plaintiffs' right to a preliminary injunction "during the pendency thereof." However, because the pertinent facts were fully developed at the hearing below and both sides have argued the issues on appeal, we will dispose of them here.
First, defendants assert that the Railway's single remaining track is insufficient possession to support plaintiffs' action. Louisiana Civil Code Article 3432 provides:
"* * * The possession of incorporeal rights, such as servitudes and other rights of that nature, is only a quasi possession, and is exercised by the species of possession of which these rights are susceptible."
The uncontradicted testimony of plaintiffs' witnesses reveals that until recent years the *156 disputed strip was scattered with tracks, loading docks, and buildings erected by the Railway and its lessees. By these constructions, the Railway clearly established its possession of the right to "occupy and use" the tract. Having once acquired corporeal possession of the property, the Railway's possession was preserved by its intention of possessing itevidenced by the single track adverted to and the lease executed with Parkway of which the City, as a cosignatory, was obviously aware. La.C.C. arts. 3442-3444. Norton v. Addie, 337 So.2d 432 (La.1976); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975).
Next, defendants contend that the possessory action was not instituted within a year of the disturbance as required by Louisiana Code of Civil Procedure Article 3658 because the Railway's possession of the beautification area was interrupted in 1973 when the City declined to pay any further rentals on it, and its possession of the remainder of the tract was disturbed on March 22, 1974 when the City removed its no parking signs, thereby opening the property to public parking.
In Liner v. Louisiana Land and Exploration Company, supra, we held that possession is not interrupted when it is merely disturbed: "[a] possessor does not lose possession against his consent unless he is forcibly expelled or unless the disturber usurps possession and holds it for more than a year [citing La.C.C. art. 3449]." 319 So.2d at 778. See also, Norton v. Addie, supra, and 2 C. Aubry & C. Rau, Droit civil francais, § 179 (La.St.L.Inst. transl. 1966).
Neither of the instances relied upon by defendants constituted an interruption of plaintiffs' possession. The City's refusal to pay rent on the beautification area cannot be considered a usurpation of that property in light of the City's continued obligations under the Parkway lease, one of which was to vacate the property when construction commenced. The Railway tolerated the City's non-payment of rentals on the express understanding that no prejudice would result to its rights under the Parkway lease. By failing to notify plaintiffs that its occupation of the beautification strip was adverse to their rights under the 1969 lease, the City relinquished any claim that this was an interruption of plaintiffs' possession.
Also, if the City could usurp the property by the public's parking on it, which we seriously question, this did not terminate plaintiffs' possession because within a year, plaintiffs interfered with the public's "possession" by installing a temporary fence around the tract.
Accordingly, the decision of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, J., recused.
NOTES
[1] We do not here decide whether the authority granted by the City Council was co-extensive with that exercised by Mayor Fant in signing the lease. The issue raised by defendants as to the validity of the lease is irrelevant to this possessory action.
[2] "Personal" is used here in the sense that the right is given for the benefit of a person rather than an estate. Such a servitude is, nevertheless, a "real" right:

"Limited personal servitudes are real rights which confer on a person limited advantages of use or enjoyment over an immovable belonging to another person. They constitute an intermediate category between personal and predial servitudes. Like usufruct, use, and habitation, they are charges on things in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another person and are confined to certain advantages of use or enjoyment. Thus, they are both "personal' and "limited." 3 A. Yiannopoulos, Louisiana Civil Law Treatise, § 123, pp. 404-405 (1968). See also, 3 A. Yiannopoulos, Louisiana Civil Law Treatise, § 125.
The right might also be what is known in French law as a "concession." See, 2 A. Yiannopoulos, Louisiana Civil Law Treatise, § 36, pp. 118-119 (1966) and 1 M. Planiol, Traite elementaire de droit civil (La.St.L.Inst. transl. 1959) No. 3094, pp. 829-30.