| NEW ORLEANS & GULF COAST RAILWAY COMPANY | * | NO. 2020-CA-0493 |
|---|---|---|
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| AMERICAN MIDSTREAM (LOUISIANA INTRASTATE), L.L.C. AND AMERICAN MIDSTREAM PARTNERSHIP, L.P. | * | STATE OF LOUISIANA |
| | * | |
| | * | |

\* \* \* \* \* \* \*

*SCJ*

## JENKINS, J., DISSENTS WITH REASONS

I would affirm the trial court's January 13, 2020 judgment granting, in part,[1] the defendant, American Midstream's ("Pipeline") motion for summary judgement. I do not find that any genuine issues of material fact exist. I agree with the trial court's reasons for judgment[2] that "the railroad does not point to any language in its deed that purports to transfer fee ownership of the property at issue to the Railroad." I find no error in the trial court's judgment dismissing New Orleans & Gulf Coast Railway Company's ("Railroad") claims as to the tracts not owned by the Railroad. The issues before the trial court were purely questions of well-settled principles of property law, specifically the rights of a servitude owner.

## STANDARD OF REVIEW

### *De Novo Review*

"An appellate court's standard of review for a grant of a summary judgment is *de novo,* and it employs the same criteria district courts consider

---

[1] I also agree with the trial court's judgment to deny in part (Pipeline) American Midstream' s motion as it relates to the four tracts of land for which plaintiff specifically claims fee ownership.

[2] This Court has adopted the "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Bruno v. CDC Auto Transport, Inc.*, 2019-1065, p. 9, n. 11 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, 13 (quoting *Wooley v. Lucksinger*, 2009-0571, 2009–0584, 2009–0585, 2009-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572). However, an appellate court may review the trial court's reasons for judgment for insight into the trial court's judgment. *Id.* (internal citations omitted).

1

when determining if a summary judgment is proper." *Harris v. Boh Bros. Constr. Co., LLC*, 2020-0248, p. 4 (La. App. 4 Cir. 12/16/20), ---So.3d----, 2020 WL 8455801 at \*2, *writ granted*, *judgment rev'd sub nom, Harris v. Boh Bros. Constr. Co.*, 2021-00084 (La. 3/16/21), 312 So.3d 565 (citing *Madere v. Collins*, 2017-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So. 3d 1143, 1147). In *Regions Ins., Inc. v. Alliance CAB Serv., LLC*, 2019-0714, p. 4 (La. App. 4 Cir. 3/4/20), 293 So.3d 1218, 1221 (quoting *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, pp. 5-6 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81), this Court explained

> This [*de novo*] standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law.

### *Burden of Proof*

Pursuant to La. C.C.P. art 966D(1), the burden of proof on a motion for summary judgment rests with the mover; however, if the mover will not bear the burden at trial and is able to point out the adverse party's absence of factual support for one or more elements essential to the claim, the burden shifts to the adverse party. Despite the shifting burden of proof, our jurisprudence has recognized that, "[t]he burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case showing that there are no genuine issues of material fact." *Forstall v. City of New Orleans*, 2017-0414, p. 10 (La. App. 4 Cir. 1/17/18), 238 So.3d 465, 472 (*citing Roadrunner Transp. Sys. v. Brown*, 2017-0040, p. 7, n. 4 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270).

## DISCUSSION

I find that the Pipeline, as the moving party, has presented a *prima facie* case to show plaintiff's absence of factual support to establish the Railroad's ownership

interest in the land on which the pipeline enjoys servitude rights. The burden, therefore, then shifted to the Railroad to prove that it has ownership interest in the land on which the pipeline is located.

Ownership interest is significant in this case because of the inherent rights of an owner of immovable property versus the distinct rights of one who possesses a servitude for right of way. Throughout the pleadings, the plaintiff asserts it had the right to demand removal of the natural gas transmission pipeline at defendant's sole cost and expense; that it had the right to restore the property to the condition it was in at the time of the construction of defendant's natural gas transmission pipeline, at defendant's sole expense; and the defendant owes indemnity to plaintiff for all costs and expenses incurred in the removal of the pipeline and restoration of the property to plaintiff's satisfaction, including court costs and attorney's fees.

Nothing in the record before the court today establishes that the plaintiff can exercise the rights of an owner of immovable property, as the Railroad is merely an entity which has been granted servitudes for right of ways.

*Ownership Interest versus Personal Servitude Rights*

The Railroad raises the same meritless "exclusive use of land" argument as the railroad company in *Faulk v. Union Pac. R.R. Co.*, 2014-1598 (La. 6/30/15), 172 So. 3d 1034. *Faulk* found its way to the Louisiana Supreme Court as a certified question from the U.S. Fifth Circuit. The question posed to the court queried, "whether LSA–R.S. 48:394 violates the Louisiana Constitution's prohibition on takings." *Faulk v. Union Pac. R.R. Co.*, 2014-1598, p. 6, 172 So. 3d at 1042. Prior to *Faulk* reaching the Louisiana Supreme Court, the "federal district court concluded that the railroad has only a servitude over the plaintiffs' lands, after considering the language of the pertinent deeds and the fact that the plaintiffs and/or their ancestors-in-title had paid ad valorem taxes on these properties

3

through the years." *Faulk*, 2014-1598, p. 6, 172 So. 3d at 1041–42 (citing *Faulk v. Union Pacific Railroad Company,* 2013 WL 1193069 (W.D.La.2013) (unpublished)).

In resolving the constitutionality of the statute in question, the *Faulk* Court first distinguished the difference between ownership interest and personal servitude rights of the parties:

> Union Pacific's contention that it is now entitled to *exclusive* use of the land on which it only has a right of use servitude is clearly without merit. A right of use, under Louisiana law, is a limited personal servitude, not ownership.

*Faulk*, 2014-1598, p. 20, 172 So. 3d at 1051.

In this case, there is no evidence in the record that the landowners transferred ownership interest of the land to the Railroad. Therefore, no exclusive land use right exist for the railroad to grant a servitude or to prohibit additional servitudes on the land where no ownership interest exist. A right of way granted to a public railroad does not transfer ownership of the affected property under Louisiana law, unless the deed itself evidences that the parties intended otherwise. *See Texas & Pac. Ry. Co. v. Ellerbe,* 6 So.2d 556, 557 (La.1942); *Bond v. Texas & P.R. Co.,* 160 So. 406 (La.1935). A railroad's right of way is a "limited personal servitude," rather than a predial servitude. *See Farrell v. Hodges Stock Yards, Inc.*, 343 So.2d 1364, 1371 (La.1977); *Parkway Development Corp. v. City of Shreveport,* 342 So.2d 151, 153–54 (La. 1977); *Board of Commissioners of Port of New Orleans v. Illinois Central Gulf Railroad Co.,* 379 So.2d 838, 841 (La. App. 4 Cir. 1980).

4

*Expiration of Encroachment Agreement*

The Railroad mistakenly relies on the Longitudinal Pipeline Encroachment Agreement entered into by the parties[3] as granting it more rights than it legally had as a party which simply possessed servitudes for right of ways.

A review of the Longitudinal Pipeline Encroachment Agreement reflects that the parties entered into a fifteen year licensing agreement, whereby Creole paid a $250,000.00 licensing fee to operate a pipeline parallel to the Railroad for approximately 6.64 miles. At the end of the fifteen year period, the Pipeline had the option to renew the agreement. Additionally, both parties possessed the right to terminate the agreement. At the fifteen year termination date, the Pipeline, by letter to the Railroad's counsel, informed the railroad that the original agreement was entered into for the purpose of providing their predecessor (Creole) the necessary space for construction. The Pipeline further communicated that it no longer required such space and will therefore allow the agreement to expire.

Only the fee owner of property can grant a servitude and has the exclusive right as the owner of the property to grant additional servitudes, as long as the additional servitudes do not interfere with the operation of the railroad. *See Inabnet v. Exxon Corp.*, 93-0681, p. 15 (La. 9/6/94), 642 So. 2d 1243, 1253. In light of the allegations in the Railroad's petition, the various pleadings filed, and the legal arguments set forth, it appears that the Railroad is under the impression that it has the legal authority to restrict and or prohibit the Pipeline's use of their own servitudes.

Prior to the expiration of the Longitudinal Pipeline Encroachment Agreement, there were no complaints of obstruction or interference by the Pipeline

---

[3] On December 6, 1999, the original agreement was entered into between the New Orleans & Gulf Coast Company, Inc. and Creole Gas Pipeline Corporation, the predecessor to American, Midstream.

of the Railroad's servitudes. The moment the Pipeline rejected the Railroad's demand to pay an additional $1,212,597.00 licensing fee and elected not to renew the Longitudinal Pipeline Encroachment Agreement, the current suit ensued requesting specific performance, demanding that the Pipeline be ordered to remove the pipeline, and raising a claim of trespass. The Pipeline and the Railroad entered into the Longitudinal Pipeline Encroachment Agreement in an effort to protect their respective interests. Once that agreement expired, the limited contractual relationship between the parties expired.

The Railroad does not possess the authority to dictate whether the Pipeline can continue to enjoy its use of the servitude rights granted to it by the landowner. The well-established body of law interpreting the Code of Civil Procedure Articles of Book II, *Things and the Different Modification of Ownership* establish the property rights for all parties involved in this litigation. Accordingly, the Railroad fails to meet its burden to show the existence of genuine issues of material fact to defeat the Pipeline's motion for summary judgment.

For the reasons assigned, I respectfully dissent from the majority opinion.